IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BARBARA KRAGOR,                              x

               Plaintiff,            :

vs.                                          :     CIVIL ACTION
                                                   FILE NO. 1:10-cv-00125-WCO

TAKEDA PHARMACEUTICALS               :
AMERICA, INC.,
               Defendant.            :
_____ x

**PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS**

A. <u>Age-Related Statements by
   Upper Level Management
   at Takeda</u>

1.

Although Ms. Kragor was promoted at the age 44, she was forced to conceal

her age. (Kragor Dep. 248).

2.

When Tony Shaw hired Ms. Kragor he told her to never let anyone know her

age. (Kragor Dep. 248). He also told Ms. Kragor that she was the oldest District

Manager in the district. (Kragor Dep. 248).

3.

Dan Orlando, Vice President of Sales-Diabetes, said at a District Managers advisory board meeting that when looking for new people, they should look for younger people to bring on board. (Kragor Dep. 253).  When he was told that as a result of a Pfizer merger there was a lot of experienced candidates available, he said those "are not the people we want", but rather, "younger people." (Kragor Decl., ¶5).

4.

Kirk Barnes told Ms. Kragor, "It is not always good to let people know how old your boys are", and that she was the oldest District Manager in the region. (Kragor Decl., ¶¶2, 4; Kragor Dep. 249).

5.

Jay Cardiello asked Ms. Kragor why she got into the industry so late in life and how long she planned on working. (Kragor Dep. 251).

6.

Jen Jennings said to Ms. Kragor, "Your team is pretty old.  You need to get some new, younger people on your team" (Kragor Dep. 245), "I hope I look that good when I am your age" (Kragor Dep. 244), and "Can you believe how hold her boys are?" [referring to Ms. Kragor], (Kragor Decl., ¶3).

2

7.

Ms. Kragor was asked directly hold old she was by Kirk Barnes, Jay Cardiello and Jen Jennings. (Kragor Dep. 244).

B.  The Buddy Passes

8.

At all relevant times, Ms. Kragor's husband was employed as a pilot for Delta Airlines. (Kragor Decl., ¶15).  In that capacity, Mr. Kragor was able to obtain discounted airline tickets, known as "buddy passes." (*Id*.).  As a result of Mr. Kragor's pre-existing friendship with Dr. Bode, and since Mr. Kragor was able to obtain buddy passes as a Delta pilot, Mr. Kragor would from time to time sell buddy passes to Dr. Bode. (*Id*.).  At all times Dr. Bode would pay the full market price for the buddy pass. (Kragor Decl., ¶15; Kragor Dep. 165, 167).

9.

On occasions when Bud Kragor was in the cockpit and without a laptop, Barbara Kragor would act as intermediary for her husband to facilitate selling the buddy pass to Dr. Bode. (Bode Decl., ¶4; Kragor Decl., ¶16; Kragor Dep. 167 – 69, 185 – 86).

10.

Upper level management at Takeda know all about Dr. Bode and Bud Kragor golfing together and about the aforesaid practice whereby Ms. Kragor

would act as intermediary in Dr. Bode purchasing buddy passes from Bud Kragor. (Kragor Dep. 165, 216, 217; Kragor Decl., ¶¶17, 18). Ms. Kragor specifically told her supervisors, Kirk Barnes, Jay Cardiello and Jen Jennings about it. (Kragor Dep. 217).

11.

Kirk Barnes, one of Ms. Kragor's supervisors, also golfed with Dr. Bode. (Kragor Dep. 216).

12.

Upper level management at Takeda knew that Ms. Kragor would act as intermediary for her husband in selling buddy passes to Dr. Bode pursuant to Mr. Kragor's pre-existing relationship with Dr. Bode, well in advance of any investigation in 2008.  (Kragor Dep. 165, 216 – 17; Kragor Decl., ¶¶17, 18).

13.

Everybody at Takeda – including but not limited to Dan Orlando – knew that Ms. Kragor's husband had a pre-existing personal relationship as golfing buddies with Dr. Bode and that Mr. Kragor, as a Delta pilot, occasionally provided Dr. Bode with Delta buddy passes as part of that relationship.  (Kragor Decl., ¶¶17, 18).

14.

In or about July/August 2008, Ms. Kragor's husband and two sons were planning a trip to Ireland to golf at a golf course at which Dr. Bode was a member. Dr. Bode made arrangements for the golf outing via his membership, and had the expenses billed to him as a member, with the explicit understanding that Mr. Kragor would reimburse Dr. Bode after he received the bill from the golf club. At or about the same time, Dr. Bode purchased buddy passes from Mr. Kragor, using Ms. Kragor as an intermediary since Mr. Kragor was unavailable at the time. Dr. Bode offered to provide his credit card information to be billed for the buddy passes, but Ms. Kragor offered to put the expense on her own (personal, not corporate) American Express card to offset the anticipated money that the Kragors would owe to Dr. Bode once he received the bill from the golf club in Ireland. After subsequently receiving notice of the amount billed by Dr. Bode, Mr. & Ms. Kragor reimbursed Dr. Bode. (Kragor Dep. 219 – 31; Kragor Dep., Ex. 25; Kragor Decl., ¶19).

C. <u>Ms. Kragor did not authorize paying for holiday parties</u>

15.

Jason Diaz told Ms. Anderson that Ms. Kragor had not specifically requested that they expense holiday parties for Dr. Bode. (Anderson Decl., ¶9).

16.

The expense reports submitted by Jason Diaz and Ashley Woodlief on their face do not reflect any improper expenses, nor any expenses for any holiday parties. (Kragor Dep., Exs. 20 – 24; pp. 187 – 204).

17.

Ms. Kragor did not authorize Jason Diaz or anyone else to expense holiday parties for Dr. Bode. (Kragor Dep. 187 – 204; Kragor Decl., ¶21).

D. <u>Autumn Jeter displaced</u>
   <u>By TAP merger</u>

18.

In 2008, Takeda merged with TAP Pharmaceuticals.  As a result of the merger numerous Takeda employees were deemed "assigned but displaced", which meant that those employees effectively did not have a job.  (Kragor Decl., ¶9). One of those employees who was deemed assigned but displaced as a result of the merger was Autumn Jeter. (Kragor Decl., ¶9; Kragor Dep., 144 – 45).  Ms. Jeter was a displaced District Manager residing in Tennessee. (Kragor Dep., 255).

19.

Jen Jennings directed that Autumn Jeter be given "precedence" with respect to her being selected as Ms. Kragor's replacement. (Exh. 2).

E.  Takeda did not have a good-faith belief
    that Ms. Kragor had done anything wrong.

20.

Defendant did not have a good-faith belief at the time it fired Ms. Kragor that she had authorized anyone to expense holiday parties for Dr. Bode. (Anderson Decl., ¶9, Kragor Dep., Exs. 20 – 24, pp. 187 – 204, Bode Decl., ¶8).

21.

Melissa Anderson and Ed Flynn refused Ms. Kragor's request that they interview Dr. Bode. (Kragor Decl., ¶22).

22.

Nobody at Takeda ever spoke to Dr. Bode regarding the allegations against Ms. Kragor prior to her being fired. (Kragor Dep. 200, 207; Bode Decl., ¶7).

23.

Dan Orlando made the decision to fire Ms. Kragor. (Orlando Decl., ¶9; Exh. 3; Kragor Decl., ¶12).

24.

After Ms. Kragor had been fired by Takeda Dan Orlando told Dr. Bode that she had done nothing wrong, that she had done everything right, and that she should not have been fired. (Bode Decl., ¶8).

7

25.

Defendant did not have a good-faith belief that Ms. Kragor had violated Takeda's compliance policies. (Bode Decl., ¶8).

26.

Defendant did not have a good-faith belief that Ms. Kragor had engaged in any acts that gave the appearance of having violated any of Takeda's compliance policies. (Bode Decl., ¶8).

27.

Defendant did not have a good-faith belief that Ms. Kragor had done anything wrong. (Bode Decl., ¶8).

28.

Defendant did not have a good-faith belief that Ms. Kragor should have been fired in August/September 2008. (Bode Decl., ¶8).

F.  <u>Pam Cofield not disciplined for violating
    Takeda's compliance policy</u>

29.

Pam Cofield was a Sales Representative who for an interim period of time was under Ms. Kragor's immediate supervision. (Kragor Dep. 102).  Ms. Kragor became aware that Ms. Cofield was having an affair with a physician who was a Takeda speaker, and she was the only Sales Representative using him as a speaker and providing him with honorariums and coming to Takeda sponsored dinners with

him. (Kragor Dep. 101).  Ms. Kragor knew of her own personal knowledge that Ms. Cofield was having the affair. (Kragor Dep. 103; Kragor Decl., ¶14).

30.

On or about September 25, 2007, Pam Cofield was fund by Takeda to have violated Defendant's compliance policy by having Dr. Brady as a speaker at Defendant's events even though she had a personal relationship with him.  Ms. Cofield was given no more than a warning and a direction not to plan any future events with Dr. Brady as a speaker.  Melissa Anderson, among others at Defendant, was aware of this. (Exh. 1).

Respectfully submitted, this 16th day of May 2011.

> s/Robert N. Marx
> Georgia Bar No. 475280
> Jean Simonoff Marx
> Georgia Bar No. 465276
> Attorneys for Plaintiff
> Marx & Marx, L.L.C.
> 5555 Glenridge Connector, Suite 200
> Atlanta, Georgia 30342
> Telephone:  (404) 261-9559
> E-mail:  lawyers@marxlaw.com

9

10

## CERTIFICATE OF COMPLIANCE

In accordance with L.R. 7.1(D), counsel for Plaintiffs hereby certifies that this document was prepared in Times New Roman, 14-point font, as permitted by L.R. 5.1(B).

s/Robert N. Marx_____
Robert N. Marx

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BARBARA KRAGOR,                                    x

        Plaintiff,                          :

vs.                                                :     CIVIL ACTION
                                                         FILE NO. 1:10-cv-00125-WCO

TAKEDA PHARMACEUTICALS                             :
AMERICA, INC.,
        Defendant.                           :
_____ x

**CERTIFICATE OF SERVICE**

      This is to certify that on May 16, 201I, I electronically filed: **Plaintiff's Statement of Disputed Material Facts,** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filings to the following attorney of record:

        Patrick F. Clark, Esq.

        Ogletree Deakins Nash Smoak & Stewart, P.C.

        191 Peachtree Street, N.E.

        Suite 4800

        Atlanta, GA 30303

Respectfully submitted, this 16th day of May 2011.

        **s/Robert N. Marx**
        Robert N. Marx, Esq.
        Georgia Bar Number 475280
        Jean Simonoff Marx, Esq.
        Georgia Bar No. 475276
        Marx & Marx, L.L.C.
        5555 Glenridge Connector, Suite 200
        Atlanta, Georgia 30342
        Telephone:  (404) 261-9559
        lawyers@marxlaw.com

11

Attorneys for Plaintiff